UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TARIK DEBRONTE SCOTT,

                    Petitioner,                    Case No. 1:18-cv-479

v.                                                 Honorable Janet T. Neff

GREG SKIPPER,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Tarik Debronte Scott is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia County, Michigan.  On June 5, 2014, following a four-day jury trial in the Jackson County Circuit Court, Petitioner was convicted of attempted murder, in violation of Mich. Comp. Laws § 750.91, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  On September 17, 2014, the court sentenced Petitioner to a term of imprisonment of 17 to 30 years for attempted murder, to be served consecutively to a 2-year term of imprisonment for felony-firearm.

On April 25, 2018, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

> I.      A writ of habeas corpus should issue where the state trial court violated Petitioner's constitutional right to confrontation and reversibly erred by admitting the prior testimony of Warnaja Crider where the prosecutor had not demonstrated that they had used due diligence to try to produce her at trial, nor that her testimony was sufficiently reliable to be used at trial in her absence.

II.    A writ of habeas corpus should issue where due process requires a new trial based on post-trial testimony from the only eyewitness to state that Petitioner had a gun—demonstrating that she gave perjured testimony.

III.    A writ of habeas corpus should issue where Petitioner is entitled to a new trial because a finding that he is guilty of attempted murder and felony firearm is against the great weight of the evidence given that the only evidence that Petitioner had a gun was the incredible testimony of one witness with a substantial criminal history who did not appear at trial.

(Pet., ECF No. 1, PageID.12-13.)  Respondent has filed an answer to the petition (ECF No. 10) stating that it should be denied because the arguments advanced are meritless and/or not cognizable on habeas review.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless or non-cognizable.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

On September 6, 2013, after a football game in Jackson County, members of rival gangs stood across the street from each other shouting.  A gang member on one side of the street pulled out a gun, said "I'm going to air this bitch out," and started shooting into the group on the other side of the street.  A minor female was shot.  The victim's friend, Ms. Crider, a fourteen-year-old girl, told police the shooter was Petitioner and then so testified at the preliminary examination hearing.  (Prelim. Exam. Hr'g, ECF No. 11-2, PageID.196-220.)

Ms. Crider was the only person who identified Petitioner as the shooter.  Before Petitioner's trial she moved to Colorado.  (Pretrial Hr'g II Tr., ECF No. 11-5; Pretrial Hr'g III Tr., ECF No. 11-6.)  She was subpoenaed to appear for trial, but she did not appear.  Her preliminary examination testimony was read into the record.  (Trial Tr. II, ECF No. 11-8, PageID.542.)  The jury deliberated for a few hours before reaching the verdict that Petitioner was guilty of attempted murder and felony-firearm.

2

Ms. Crider moved back to the Jackson area shortly after trial.  Ms. Crider communicated with Petitioner's mother.  According to Petitioner's mother, Ms. Crider admitted that she did not see Petitioner "do the shooting."  (Mot. for New Trial I, Hr'g Tr. I; ECF No. 11-11, PageID.803-804.)  Petitioner's counsel informed the trial judge that Petitioner's mother had recorded phone messages from Ms. Crider to support the recantation.  (*Id.*, PageID.805.)  The trial judge postponed sentencing to permit additional investigation into Petitioner's claims and issued a warrant for Ms. Crider.  (*Id.*, PageID.806-807.)

Ms. Crider was picked up on the warrant and held, but she was released before Petitioner's counsel could interview her.  (Mot. for New Trial I, Hr'g Tr. II, ECF No. 11-12, PageID.811-813.)  The prosecutor was able to interview her briefly before she requested counsel.  (*Id.*)

The trial court held another hearing on Petitioner's motion for new trial on September 10, 2014.  Ms. Crider was subpoenaed for the hearing, but she did not appear.  (Mot. for New Trial I, Hr'g Tr. III, ECF No. 11-13, PageID.828-830.)  Nonetheless, based on the court's prior order to further investigate Ms. Crider's recantation, Detective Holly Rose prepared supplemental reports.  (*Id.*)  The prosecutor argued, based on the supplemental reports from Detective Rose and his own interviews with Ms. Crider, that Ms. Crider had not really recanted.  (*Id.*, PageID.849-850.)  The court informed Petitioner's counsel he could take additional time and submit supplemental argument on the date scheduled for sentencing.  (*Id.*, PageID.853.)

On the date scheduled for sentencing, Petitioner's counsel presented supplemental argument and a recording of Ms. Crider's post-trial telephone conversation with Petitioner's mother.  (Sentencing Hr'g Tr., ECF No. 11-14, PageID.857-864.)  The prosecutor responded with reports of his conversations with Ms. Crider.  According to the prosecutor, Ms. Crider stood by her preliminary examination testimony and explained that she had been threatened if she testified.

(*Id.*, PageID.864-866.)  Despite the recorded recantation, the trial judge denied Petitioner's motion for new trial.  (*Id.*, PageID.866-868.)   The court proceeded to sentence Petitioner as described above.

Petitioner, with the assistance of counsel, appealed his convictions and the denial of his motion for new trial.  The Michigan Court of Appeals, on its own motion, remanded the matter to the trial court for a new hearing on the motion for new trial.  (Mich. Ct. App. Order, ECF No. 11-16, PageID.969.)

The recanting witness testified at the hearing.  (New Trial Motion II, Hr'g Tr., ECF No. 11-15, PageID.884-895.)  She acknowledged that she had told prosecutors, even after the trial, that her preliminary examination testimony was true and that she had been threatened if she testified. (*Id.*, PageID.890.)  But, she also acknowledged that she believed her identification of Petitioner as the shooter was a mistake.  (*Id.*, PageID.894.)  Ms. Crider's position is well presented in this brief exchange with the trial judge:

| | |
|---|---|
| THE COURT: | I guess I've just got a question, you remember taking an oath at preliminary examination, is that correct? |
| THE WITNESS: | Yes. |
| THE COURT: | Why—why is it that you felt that your testimony is different today? |
| THE WITNESS: | It's not different, I realized that I made a mistake then. |
| THE COURT: | Okay, do you think your memory's better now than it was at preliminary exam? |
| THE WITNESS: | No. |
| THE COURT: | And why do you felt—why do you feel that you made a mistake between when you testified at preliminary exam and what you're testifying today? |
| THE WITNESS: | Because I don't want to let someone spend time in prison for something they really didn't do. I was young -- |

4

THE COURT:          Was what you said at preliminary exam knowingly false?

THE WITNESS:       No.

(New Trial Motion II, Hr'g Tr., ECF No. 11-15, PageID.893-894.)  Even after her testimony, the

trial judge could still not discern "what changed her mind or why she made a mistake[.]"  (*Id.*,

PageID.898.)

The trial court recognized that the recorded telephone conversation between Petitioner's

mother and Ms. Crider was new evidence, that it was not cumulative, and that Petitioner could not

have produced it at trial.  (Jackson Cty. Cir. Ct. Order, ECF No. 11-16, PageID.974.)  But the court

denied the motion for new trial because it was not convinced that the new evidence would make a

different result probable on retrial.  (*Id.*)  The court reasoned:

> No other form of proof is so unreliable and treated with as much skepticism as
> recantation testimony. *People v. Van Den Dreissche*, 233 Mich 38, 46 (1925).
> "Michigan courts have expressed reluctance to grant new trials on the basis of
> recanting testimony." *Canter*, 197 Mich App at 560.  The decision to grant a new
> trial is committed to the trial court's discretion, given this Court's "superior
> opportunity to appraise the credibility of the recanting witness and other trial
> witnesses." *Id.*
>
> Here, the Court has had the opportunity both to read and listen to Ms. Crider's
> recorded recantation and to examine Ms. Crider personally at the evidentiary
> hearing held on this evidence.  Before the preliminary examination, Ms. Crider was
> threatened against testifying by people she would not name; despite this, Ms. Crider
> remained firm in her conviction that she had seen Defendant shoot her best friend,
> Shaniqua Hall.
>
> Now, however, Ms. Crider states that she was mistaken during her earlier testimony
> and that she never actually saw Defendant shoot anyone.  When questioned, she
> admitted that she and Hall are no longer friends and that she is still being threatened
> for her part in Defendant's conviction.  She stated that she is now also being
> threatened by the prosecution with perjury charges and that she chooses to testify
> now despite this so because of the guilt she feels for helping convict an innocent
> man.
>
> When asked why she changed her mind about her previous testimony, however,
> Ms. Crider could provide no answer or explanation.  She only repeated that she had
> not lied, but rather, had been mistaken.  She could not tell the Court what caused

5

her to come to this conclusion, only that the myriad threats she had received and is still receiving were not the cause.

Ms. Crider's recantation testimony is highly suspect and without much weight. She gives no explanation for her sudden about-face and it appears highly likely that she is changing her story in response to multiple threats from Defendant's associates urging her to recant. . . . . [T]he Court thus finds that this testimony is not credible and does not make a new result probable at retrial . . . .

(*Id*., PageID.975-976.)

The parties returned to the court of appeals. Petitioner raised the same issues in the court of appeals that he raises by way of this habeas petition. By unpublished opinion issued August 23, 2016, the court of appeals denied relief. (Mich. Ct. App. Op., ECF No. 11-16, PageID.903.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues he raises in this habeas petition. By order entered January 31, 2017, the Michigan Supreme Court denied the application. (Mich. Order, ECF No. 11-17, PageID.983.) Petitioner then timely filed this habeas corpus petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

6

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Confrontation Clause

Petitioner contends that the admission of Ms. Crider's preliminary examination testimony violated his rights under the Confrontation Clause.  Petitioner claims that the prosecutor failed to show that the witness was unavailable and, also, that the prosecutor failed to show that the preliminary examination testimony was reliable.

The Michigan Court of Appeals agreed with Petitioner that the Confrontation Clause required the prosecutor to demonstrate "good-faith efforts to obtain the witness's presence at trial and [that] the testimony is sufficiently reliable."  (Mich. Ct. App. Op., ECF No. 11-16, PageID.905.)  But, the appellate court concluded that "[g]enerally, testimony taken at a preliminary examination is sufficiently reliable."  (*Id.*) (citing *Barber v. Page*, 390 U.S. 719, 724-25 (1968)). The court of appeals also reviewed the efforts the prosecutor made to obtain Ms. Crider's presence at trial and concluded "that the trial court's determination that the prosecution engaged in reasonable efforts . . . did not fall outside the range of principled outcomes."  (*Id.*, PageID.906.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Out-of-court statements are not typically subjected to the "rigorous testing" afforded by an adversary proceeding: cross-examination.  But, there are occasions where out-of-court statement have been tested by cross-examination, for example, the circumstance presented here—sworn testimony from prior court proceedings.

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia*, *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)).  But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony.  *Al-Timimi*, 379 F. App'x at 438. As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent.  *Al-Timimi*, 379 F. App'x at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636

(6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination); *Miller v. MacLaren*, 737 F. App'x 269, 274-75 (6th Cir. 2018); (same); *Weissert v. Palmer*, 699 F. App'x 534, 538-39 (6th Cir. 2017) (same).

Petitioner's attack on the reliability of Ms. Crider's testimony does not follow from some shortcoming in the adversarial testing afforded by preliminary examinations versus trials, nor does it follow from some particular shortcoming in the cross-examination of Ms. Crider in his preliminary examination hearing. Indeed, the cross-examination of Ms. Crider at the preliminary examination hearing was quite probing. (Prelim. Exam. Tr., ECF No. 11-2, PageID.205-216, 218-219.) Instead, Petitioner claims that Ms. Crider's preliminary examination testimony was substantively unreliable because she recanted. That is not the type of reliability protected by the Confrontation Clause. The Supreme Court explained the distinction in *Crawford*:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation.

> To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Crawford*, 541 U.S. at 61. Petitioner's "reliability" challenge, therefore, does not implicate the protections of the Confrontation Clause.

Requiring cross-examination is not the only way the Confrontation Clause promotes the reliability of evidence at trial. The clause also favors actual face-to-face confrontation as a means to ensure reliability. *See, e.g., Coy v. Iowa*, 487 U.S. 1012, 1017 (1988) ("[T]here is something

deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.'").  That requirement, however, is not absolute. *Craig*, 497 U.S. at 850.  Face-to-face confrontation is preserved, to the extent practicable, by not allowing out-of-court testimonial statements unless the witness is shown to be unavailable.

The clearly established federal law with regard to Confrontation Clause "unavailability" was set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980):

> The basic litmus of Sixth Amendment unavailability is established: "[A] witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S., at 724-725 (emphasis added).  *Accord, Mancusi v. Stubbs, supra*; *California v. Green*, 399 U.S., at 161-162, 165, 167, n. 16; *Berger v. California*, 393 U.S. 314 (1969).
>
> Although it might be said that the Court's prior cases provide no further refinement of this statement of the rule, certain general propositions safely emerge.  The law does not require the doing of a futile act.  Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution.  But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation.  "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *California v. Green*, 399 U.S., at 189, n. 22 (concurring opinion, citing *Barber v. Page, supra* ).  The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.  As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate.

*Id*. at 74-75.[1]

The Michigan Court of Appeals concluded that the prosecutor had made good faith efforts to compel Ms. Crider to appear at Petitioner's trial:

> Whether the prosecution made good-faith efforts to secure a witness depends on the circumstances of each case.  *Bean*, 457 Mich at 684.  The prosecution must

---

[1] Although *Crawford*, 541 U.S. at 36, eliminated the *Roberts* "indicia of reliability" exception, it left intact the stated requirement of unavailability.  *Crawford*, 541 U.S. at 68 ("[T]he Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."); *see also Hardy v. Cross*, 565 U.S. 65, 70-72 (2011) (applying *Roberts* unavailability standard); *Hamilton v. Morgan*, 474 F.3d 854, 858-59 (6th Cir. 2007) (applying the unavailability standard of *Roberts* and acknowledging that *Crawford* overruled *Roberts* on other grounds).

inquire of persons who could help them locate the witness, check out specific leads, and attempt to locate witnesses in foreign jurisdictions. *See Bean*, 457 Mich at 689-690.   Tardy or incomplete efforts to locate the witness are not sufficiently reasonable. *People v Dye*, 431 Mich 58, 68; 427 NW2d 501 (1988) (opinion by LEVIN, J.).

We conclude that the trial court did not abuse its discretion when it determined that the prosecution engaged in reasonable efforts to secure the unavailable witness. Detective Rose indicated that the witness initially stated that she would testify in the trial. The prosecution served the witness with a subpoena, but the witness failed to respond. Subsequently, the prosecution engaged in frequent telephone contacts to attempt to secure the witness, calling "sometimes several times a day." After those contacts were not returned, the prosecution sought an adjournment to secure the witness.

The prosecution discovered that the witness was located out of state, and it served a subpoena on the witness's mother. From April 10 to May 27, 2014, the prosecution's assistant left numerous voicemails for the witness's mother. Only after its efforts were unsuccessful did the prosecution move the trial court to allow it to use the witness's preliminary examination testimony. The trial court reserved its ruling, and the judge himself telephoned the witness's mother, threatening to hold her in contempt of court if she did not produce the witness. The mother did not respond.

The prosecution's efforts were not tardy in comparison to the trial date, since it adjourned the trial in order to secure the witness. Additionally, the prosecution's efforts were not incomplete. It subpoenaed the witness, located the witness after the witness left the state, and subpoenaed the witness's mother. Despite these efforts and a contempt threat, the mother still refused to produce the witness. The trial court need only find that the prosecution engaged in reasonable efforts. See *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004). We conclude that the trial court's determination that the prosecution engaged in reasonable efforts in this case did not fall outside the range of principled outcomes.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.905-906.)

In the context of review under the AEDPA, the Supreme Court has cautioned against

disturbing a state court's reasonable conclusion regarding unavailability:

[W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence…but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising.   And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because

the federal court identifies additional steps that might have been taken.  Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.

*Hardy v. Cross*, 565 U.S. 65, 71-72 (2011) (citation omitted).

In Petitioner's argument, he reviews the same facts considered by the trial court and the court of appeals and draws the conclusion that the prosecutor did not make a good faith effort to compel Ms. Crider's presence at trial.  (Pet'r's Br., ECF No. 2, PageID.33; Pet'r's Reply Br., ECF No. 12, PageID.1075-1076.)  Petitioner fails, however, to demonstrate that the trial court's or the court of appeals' determinations are contrary to, or inconsistent with, clearly established federal law.  Petitioner similarly fails to show that those determinations are the result of unreasonable determinations of the facts.  Instead, Petitioner suggests that the prosecution could have taken additional steps to compel Ms. Crider to attend the trial.  That is not the standard.  On the record before this Court, there is no indication that the appellate court's determination of the prosecutor's good faith is unreasonable.  Accordingly, Petitioner's challenge to the state court's determination that Ms. Crider was unavailable has no merit.

For all of the above-stated reasons, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his Confrontation Clause challenge is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

## IV.    Verdict contrary to the great weight of the evidence

Petitioner contends that the verdict was against the great weight of the evidence because it is now apparent—at least apparent to Petitioner—that the prosecutor's principal witness testified falsely at the preliminary examination.  Because that testimony was the only testimony that identified him as the shooter, he argues, the verdict is without support.

13

The Michigan Court of Appeals disagreed with Petitioner's characterization of the evidence and with his conclusion that the great weight of the evidence favored Petitioner:

> Scott also contends that his verdict was against the great weight of the evidence. Specifically, Scott contends that the vast majority of the evidence conflicted with the testimony of the sole witness who placed him at the scene, and that the witness's testimony was so thoroughly impeached that it had no probative value.  We disagree.
>
> The prosecution has the constitutionally based burden to prove each element of an offense beyond a reasonable doubt.  *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).  Generally, courts review a defendant's claim that the jury's verdict was against the great weight of the evidence to determine whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand."  *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).
>
> Conflicting testimony alone does not provide a sufficient ground to discard a verdict as against the great weight of the evidence.  *Id*. at 469-470.  This Court does not resolve credibility questions on appeal.  *Id*. at 469.  We must defer to the trier of fact's credibility determinations unless directly contradictory testimony was so far impeached that it was deprived of all probative value that it was unbelievable, or testimony contradicted physical facts or defied physical realities.  *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998).
>
> In this case, there was extensive testimony that rival gangs had a confrontation at the football game immediately preceding the shooting.  While Scott's friend and cousin testified that he was not present at the scene, both the victim and the 14-year-old witness testified that Scott was present.  The witness also testified that Scott was the one who shot into the crowd.  While the witness was allegedly a member of one of the gangs and had an extensive criminal history for her age, her testimony did not contradict physical facts, and it was not so far impeached that it had no probative value.
>
> The victim and witness both placed Scott at the scene of the shooting.  Additionally, Scott called his cousin on the telephone even though they were allegedly together in a different location at the time.  While Scott's phone was no longer in the area at the time of the 911 call, the call occurred sometime after the shooting, and it would only have taken Scott a short time to travel between the locations.  We conclude that the evidence does not preponderate so heavily in the opposite direction that it would be a miscarriage of justice to allow the verdict to stand.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.907.)

The assertion that the verdict was against the great weight of the evidence is not a basis for habeas corpus relief.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude."  *Id.* at 133 n.8.  As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst*., No. 2:10-cv-1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08-cv-642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review.").  Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdict was not against the great weight of the evidence is final.

To the extent Petitioner intended to challenge the sufficiency of the evidence, his claim also fails.  A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).  The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.

Petitioner's present contention that the evidence does not support his conviction depends on a determination that Ms. Crider's testimony is not credible.  That credibility determination is the responsibility of the jury; it is outside the scope of habeas review.  *Herrera*, 506 U.S. at 401-02.  Moreover, Petitioner's position depends entirely on "new evidence" that was not presented at trial.  A *Jackson v. Virginia* sufficiency claim, however, is necessarily limited to the evidence the jury had before it.  *See, e.g., Herrera*, 506 U.S. at 402 ("[T]he sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence." . . . *Jackson* does not extend to nonrecord evidence, including newly discovered evidence.") (citation omitted); *House v. Bell,* 547 U.S. 518, 538-39 (2006) (contrasting a sufficiency claim under *Jackson v. Virginia* with a *Schlup v. Delo*, 513 U.S. 298 (1995), claim of actual innocence based on new evidence).  Therefore, Petitioner has failed to show that the evidence presented to the jury was insufficient to support his convictions for attempted murder or felony firearm.

## V.    **Perjured testimony**

Petitioner contends that his due process rights were violated by the use of Ms. Crider's testimony at trial because that testimony was perjurious.  The existence of perjured testimony in a

trial, however, standing alone, is not a constitutional violation.  *Bower v. Curtis*, 118 F. App'x 901,
908 (6th Cir. 2004) ("Even if accepted, a post-trial recantation is generally not sufficient to grant
habeas relief absent [an independent] constitutional error."); *Welsh v. Lafler*, 444 F. App'x 844,
850 (6th Cir. 2011) (same); *Kennedy v. Mackie*, 639 F. App'x 285, 292 (6th Cir. 2016) (same).
Perjured testimony may give rise to a constitutional claim where it is a  "deliberate deception of a
court and jurors by the presentation of known false evidence," which "is incompatible with
'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting
*Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  Such a use of perjured testimony amounts to
prosecutorial misconduct.

To establish a prosecutorial misconduct claim based on the use of perjured testimony,
Petitioner must show "(1) the statement was actually false; (2) the statement was material; and (3)
the prosecution knew it was false."  *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)
(citations omitted).  *See also Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  Petitioner bears the burden
of demonstrating that the testimony was actually perjured.  *Lochmondy*, 890 F.2d at 822.  "[M]ere
inconsistencies in testimony by government witnesses do not establish knowing use of false
testimony."  *Id.*

At the preliminary examination, Ms. Crider's testimony was unequivocal: Petitioner
threatened to shoot and then fired several shots into the crowd.  (Prelim. Exam. Tr., ECF No. 11-
2, PageID.201-203.)  When she testified at the motion for new trial, she indicated that Petitioner
was not the shooter.  (Hr'g Tr., ECF No. 11-15, PageID.895.)  But, she also testified that her
preliminary examination testimony was true when it was made; it was true after Petitioner's trial;
and that she had been threatened by members of the community for providing testimony.  (*Id.*,
PageID.890.)  The trial judge attempted to explore with Ms. Crider why she had changed her mind;

she could provide no answer or explanation.  (Jackson Cty. Cir. Ct. Order, ECF No. 11-16, PageID.975.)  The judge found that it was highly likely that Ms. Crider changed her testimony in response to threats.  (*Id*., PageID.976.)  He found her recantation testimony incredible.  The court of appeals concluded that the trial judge's determinations fell within the range of principled outcomes:

> The witness testified that her memory was not better at the time of the time of the evidentiary hearing than at the time of the preliminary examination, and that what she said at the preliminary examination was not knowingly false.  She testified that individuals within the community threatened her if she testified.  Given the opportunity to view the witness's demeanor at the evidentiary hearing, the trial court found that her recantation was influenced by something other than an honest belief that her initial identification of Scott was mistaken.

(Mich. Ct. App. Op., ECF No. 11-16, PageID.907.)

The state court's factual determination that Ms. Crider's recantation testimony was not credible is presumed to be correct.  Petitioner can only overcome that presumption with clear and convincing evidence.  He has not offered anything more than the new trial motion hearing testimony that the state courts found so unconvincing.  That was a reasonable assessment of Ms. Crider's testimony.  Moreover, Petitioner has failed to provide any evidence that the prosecutor knew Ms. Crider's preliminary examination testimony was "false."  Therefore, there is no prosecutorial impropriety that might render the existence of perjured testimony and a constitutional violation.

Even if Petitioner were able to provide clear and convincing evidence that Ms. Crider's recantation were credible, it would not support habeas relief.  In *Herrera*, 506 U.S. at 390, the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Id*. at 400.  But the *Herrera* Court did not close the door completely, stating in *dicta*: "in a capital case a truly persuasive

18

demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House*, 547 U.S. at 555 ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural

obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases). Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have

examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    April 7, 2020                          /s/ Sally J. Berens
                                                 Sally J. Berens
                                                 United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).